LYNN ADELMAN, District Judge
The United States alleges that Sikorsky Aircraft Corporation and two of its subsidiaries, Sikorsky Support Services, Inc. ("SSSI") and Derco Aerospace, Inc., are liable for submitting inflated invoices for payment by the U.S. Navy, in violation of the False Claims Act, 31 U.S.C. §§ 3729 - 33, and other laws. In their answers, the defendants plead a list of affirmative defenses. The government now moves to strike the defenses on the ground that the defendants did not plead them with the level of detail required by the Federal Rules of Civil Procedure. The government also contends that the affirmative defenses *862 would fail as a matter of law and that therefore I should not grant the defendants leave to replead.
As explained below, I would like to find that the defendants have adequately pleaded their defenses. However, under Seventh Circuit precedent, affirmative defenses must be pleaded with more detail than the defendants have supplied here. Therefore, I will strike the defenses. But because the defendants could cure this pleading deficiency, I will grant them leave to amend. If the government chooses, it may file a fresh motion to strike the repleaded defenses. However, I will encourage the government to forego that step and instead file a motion for summary judgment after taking discovery on the defenses.
I. BACKGROUND
The government alleges that the defendants engaged in two fraudulent schemes while serving as contractors for the maintenance of Navy aircraft. First, the government alleges that SSSI, at the direction of its parent company, entered into an illegal cost-plus-percentage-of-cost subcontract with Derco. The government alleges that this illegal subcontract inflated the Navy's costs by 32%. Second, the government alleges that SSSI and Derco agreed that SSSI could take chargebacks or credits against Derco's invoices, but SSSI continued to bill the Navy for the face amount of the invoices, causing the Navy to pay more for parts than Derco actually charged. The government alleges that this conduct and certain other acts give rise to liability under the False Claims Act, common law theories of unjust enrichment and breach of contract, and the Truth in Negotiations Act, 10 U.S.C. § 2306a.
In their answers, the defendants plead a list of affirmative defenses, which I will reproduce here:
1. Counts I through XI are barred because the Untied States failed to exhaust available contractual and/or administrative remedies before bringing this action.
2. Counts I through XI are barred by the equitable defenses of waiver and ratification.
3. To the extent the alleged violations in Counts I through XI have been litigated, released, subject to audit or other administrative determinations, or otherwise compromised previously, they are barred by applicable law, including but not limited to the doctrines of accord and satisfaction, payment, waiver, release, and res judicata.
4. Counts I through XI are barred by the doctrines of course of performance, course of dealing, and/or usage of trade.
5. The United States is estopped by its prior conduct and admissions from obtaining a recovery against Defendants under Counts I through XI.
6. Defendants are entitled to a setoff against any amounts for which they are found liable under Counts I through XI to the extent Defendants made payments prior to judgment and for any amounts overpaid prior to judgment.
7. Defendants are not legally responsible for acts or omissions alleged in Counts I through XI that were undertaken by employees, subcontractors, and others to the extent that those acts or omissions prove to have been undertaken outside the scope of employment or authority, as criminal acts, in secret, and/or without the knowledge of persons having legally sufficient levels of responsibility or authority within the relevant Defendant companies.
8. Counts I through XI are barred in whole or in part because the government failed to mitigate its alleged damages.
9. Counts I through XI are barred by the equitable defense of laches.
*863 10. Counts I through XI are barred in whole or in part by the applicable statutes of limitations.
11. Counts IX and XI [for unjust enrichment] are barred because there is an express contract between SSSI and the United States Navy's Naval Air Systems Command covering the subject of Counts IX and XI.
ECF No. 99 at 17-18.
The government moves to strike all affirmative defenses under Federal Rule of Civil Procedure 12(f). The government first contends that the affirmative defenses are not pleaded with the level of detail required by the Federal Rules of Civil Procedure. It then argues that I should not grant the defendants leave to replead the defenses because all of them would fail as a matter of law even if they were adequately pleaded.
II. DISCUSSION
Federal Rule of Civil Procedure 8 states general rules of pleading. Rule 8(c) governs affirmative defenses. It provides that "[i]in responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including ...." Fed. R. Civ. P. 8(c)(1). The rule then lists 18 affirmative defenses. Some examples are "accord and satisfaction," "contributory negligence," "estoppel," "res judicata," and "statute of limitations." Federal Rule of Civil Procedure 12(f) provides that a court may strike an "insufficient defense" from a pleading.
There is relatively little guidance in the appellate caselaw about pleading affirmative defenses and moving to strike one of them as insufficient. As a result, this area is laden with uncertainty. One problem is that there is no clear definition of "affirmative defense" in the Federal Rules or in the caselaw. Obviously, the 18 matters listed in Rule 8(c)(1) are affirmative defenses, but the rule contemplates that other matters might be affirmative defenses, yet it does not state criteria for distinguishing an affirmative defense from an ordinary defense, a denial of an allegation, or a counterclaim. See 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1271 (3d ed. 2018) (" Rule 8(c) does not elaborate on how to determine what is covered by this catchall statement and thus it offers very little assistance in defining what constitutes 'any avoidance or affirmative defense' "). In the present case, the parties dispute whether several of the matters the defendants have listed as affirmative defenses are truly affirmative defenses, namely, "course of performance," "ultra vires," and "setoff." But neither party cites an appellate case that answers the question of whether these are affirmative defenses or just regular defenses to the plaintiff's claims (or, in the case of setoff, a counterclaim).
A second area of uncertainty is the level of detail needed to adequately plead an affirmative defense. Rule 8(c)(1) provides only that an affirmative defense must be "affirmatively state[d]." This suggests that a party must do no more than list the name, title, or description of the defense-like how the 18 enumerated affirmative defenses are listed in the rule itself-or maybe do no more than insert the name of the defense into a complete sentence (e.g., "The plaintiff's claims are barred by the statute of limitations."). However, Rule 8(b)(1)(A) states that, in responding to a pleading, a party must "state in short and plain terms its defenses to each claim asserted against it." It is unclear whether Rule 8(b)(1)(A) applies to affirmative defenses. Moreover, assuming that it does, it is not clear whether merely listing the affirmative defense in the manner exemplified in Rule 8(c)(1) would satisfy this short-and-plain-statement requirement. Writing "the plaintiff's claims are barred by the statute of limitations" would seem *864 to qualify as a short and plain statement of the defense, but maybe more is required.
The courts have not identified a uniform pleading standard for affirmative defenses. Some courts, including the Ninth Circuit, have held that affirmative defenses may be stated in "general terms." Kohler v. Flava Enterprises, Inc. , 779 F.3d 1016, 1019 (9th Cir. 2015) ; 5 Wright and Miller, supra , § 1274 ; see also In re Frescati Shipping Company, Ltd. , 886 F.3d 291, 313 (3d Cir. 2018) ("In general, an affirmative defense need not be articulated with any rigorous degree of specificity, and is sufficiently raised for purposes of [ Federal Rule of Civil Procedure 8 ] by its bare assertion." (Quotations and alterations omitted)). Other courts, including the Seventh Circuit, have held that to plead an affirmative defense a party must describe at least some facts and plead the "elements" of the defense. Heller Fin., Inc. v. Midwhey Powder Co., Inc. , 883 F.2d 1286, 1294 (7th Cir. 1989). Finally, after Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), courts have split over whether the "plausibility" standard that now governs claims for relief applies to affirmative defenses. See, e.g. , GEOMC Co., Ltd. v. Calmare Therapeutics Inc. , 918 F.3d 92, 97-98 (2d Cir. 2019) (citing district-court cases and law review articles showing division over whether the plausibility standard applies to affirmative defenses and concluding that, with certain qualifications, the standard does apply); Joseph A. Seiner, Plausibility Beyond the Complaint , 53 Wm. & Mary L. Rev. 987 (2012) (arguing that courts should apply the plausibility standard to affirmative defenses); Anthony Gambol, Note, The Twombly Standard and Affirmative Defenses: What is Good for the Goose is not Always Good for the Gander , 79 Fordham L. Rev. 2173 (2011) (arguing that courts should not apply the plausibility standard to affirmative defenses).[1]
Despite the lack of clear standards for identifying affirmative defenses and how to plead them, all courts and commentators agree that the basic purpose of requiring a defendant to plead affirmative defenses is to provide the plaintiff with notice that the defense may be at issue in the case. See, e.g. , Kohler , 779 F.3d at 1019 ; 5 Wright and Miller, supra , § 1270 (stating that Rule 8(c) "serves the purpose of giving the opposing party notice of the defenses that are being put in issue"); 2 James Wm. Moore, supra , § 8.08[1] (stating that purpose of requiring statement of affirmative defense is to "avoid surprise and give the opposing party an opportunity to respond"). "Fair notice" sounds like "notice pleading," which is how courts often describe the requirement to provide a short and plain statement of a claim for relief under Rule 8(a)(2). See, e.g. , Title Indus. Ins. Co., R.R.G. v. First Am. Title Ins. Co. , 853 F.3d 876, 885 (7th Cir. 2017). But the two standards should not be treated identically. As shown below, there are differences between pleading claims for relief and pleading affirmative defenses, and a careful examination of these differences suggests that the level of detail needed to provide fair notice of an affirmative defense is less than the level of detail needed to provide fair notice of a claim for relief.
*865 First, it is important to remember that a plaintiff does not have to file a responsive pleading to an answer that states an affirmative defense. Thus, one of the traditional purposes of notice pleading under Rule 8(a)(2) -to give the opposing party enough detail about the claim to enable that party to prepare an answer, see, e.g. , Marshall v. Knight , 445 F.3d 965, 968 (7th Cir. 2006) -does not apply to affirmative defenses. So while the complaint must describe the conduct giving rise to the plaintiff's claim in enough detail to enable the defendant to investigate the facts and prepare its answer, the answer does not have to provide enough detail about affirmative defenses to enable the plaintiff to prepare a responsive pleading. Second, once the plaintiff has stated a claim for relief, the case will proceed to discovery regardless of whether the defendant has stated a viable affirmative defense in its answer. Thus, a plaintiff confronted with an affirmative defense may always use discovery to learn the factual and legal basis for the defense before having to formally respond to it. In contrast, a defendant ordinarily cannot take discovery until after it files its answer. Therefore, the defendant must rely on the information in the complaint when preparing the answer.
Relatedly, the Federal Rules permit a defendant to file a motion for a more definite statement if the information in the complaint is insufficient to enable it to prepare an answer. See Fed. R. Civ. P. 12(e). But the Rules provide no similar mechanism for a plaintiff to obtain a more definite statement about an affirmative defense-a Rule 12(e) motion cannot be used with respect to an affirmative defense because such motions may be used only when "a responsive pleading is allowed." Id. This underscores that the Federal Rules contemplate that plaintiffs will plead more information about their claims than defendants will plead about their defenses.
The asymmetry in the information needed at the pleading stage explains why a plaintiff's pleading no more than "negligence" or "employment discrimination" would not satisfy Rule 8(a)(2), while a defendant's pleading no more than "contributory negligence" could satisfy Rule 8(c). The bare assertion of the nature of the claim will not provide the defendant with enough information to investigate the claim and prepare its answer. In contrast, the bare assertion of the defense will put the plaintiff on notice that the defendant may, at some point in the case, argue that the plaintiff's own negligence contributed to the claimed injury. The plaintiff will thus be alerted to the need to take discovery on this issue. Note that, to serve this notice function, the affirmative defense does not have to identify the precise conduct that is claimed to be contributory negligence: because the plaintiff does not have to file a responsive pleading, she does not need to know the details underlying the defense until discovery is underway. Moreover, so long as the plaintiff knows that contributory negligence may be an issue, she can learn the factual and legal basis for the defense by serving a single contention interrogatory on the defendant under Federal Rule of Civil Procedure 33 or by using whatever other discovery tool she finds convenient.
The courts and commentators that advocate for more detailed pleading of affirmative defenses offer various reasons for this approach. However, I do not find them persuasive. First, some courts state that "[a]ffirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." Heller Fin. Inc. , 883 F.2d at 1294. Technically, however, affirmative defenses are not pleadings. See Fed. R. Civ. P. 7(a) (identifying pleadings allowed in federal practice). The answer is the pleading, of which the affirmative defense is *866 merely a part. And Rule 8 contains different subsections that apply to the pleading of claims for relief and affirmative defenses. Thus, in actuality, the Federal Rules do not contain a single pleading requirement that governs both claims for relief and affirmative defenses. Moreover, claims for relief are fundamentally different from affirmative defenses. A claim for relief is generally described as a "grievance." See, e.g. , ACF 2006 Corp. v. Mark C. Ladendorf, Attorney at Law, P.C. , 826 F.3d 976, 981 (7th Cir. 2016). But an affirmative defense is not a grievance; it is a reason why the plaintiff is not entitled to relief. Because claims and affirmative defenses are fundamentally different, courts should not assume that the drafters of the Federal Rules intended that they be governed by the same pleading standard.
Another argument offered by proponents of detailed affirmative-defense pleading is that basic fairness requires defendants to be held to the same pleading standards as plaintiffs. See, e.g. , Francisco v. Verizon South, Inc. , No. 3:09cv737, 2010 WL 2990159, at *7 (E.D. Va. July 29, 2010) (quoting Palmer v. Oakland Farms , No. 5:10cv00020, 2010 WL 2605179, at *5 (W.D. Va. June 24, 2010) ); Seiner, supra , at 1008-09. But as I have explained, affirmative defenses are not claims for relief, and a defendant can provide the plaintiff with fair notice of an affirmative defense by merely stating the name of the defense. Thus, fairness does not require that affirmative defenses be pleaded with the same level of detail as claims. Moreover, one of the rationales for the "plausibility" standard is to ensure that the plaintiff's claim has enough heft to justify subjecting the defendant to the expense of discovery. See Twombly , 550 U.S. at 557-60, 127 S.Ct. 1955. This rationale does not apply to the pleading of affirmative defenses. Once the plaintiff has stated a plausible claim, the case will proceed to discovery regardless of whether the affirmative defenses have merit. Thus, requiring the defendant to show, at the pleading stage, that its affirmative defenses are plausible will not prevent potentially expensive discovery.
I also note that the plausibility standard is inconsistent with the nature of most affirmative defenses. The plausibility standard requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly , 550 U.S. at 570, 127 S.Ct. 1955 ). Under this standard, claims cannot be pleaded in the form of "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action." Id. But unlike claims for relief, affirmative defenses often do not depend on much "factual matter" at all-they are mostly legal conclusions. Consider the statute of limitations. What "factual matter" could be pleaded in support of this affirmative defense? The defense generally consists of two elements: (1) the date on which the plaintiff's claim accrued, and (2) the time stated in the applicable statute of limitations. Both elements depend primarily on legal conclusions rather than facts. The date on which the claim accrued is determined by the jurisdiction's law of claim accrual, and identifying the applicable statute of limitations is a pure legal question. Thus, pleading "the plaintiff's claim accrued on [date] and is therefore barred by the statute of limitations contained in [statute]" would be the pleading of a legal conclusion. It would not be the pleading of "factual matter" that the court could "accept[ ] as true." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. Thus, many affirmative defenses simply do not fit into the plausibility framework.
Some proponents of detailed defense pleading contend that implausible affirmative defenses cause plaintiffs to take unnecessary expensive discovery. See Seiner, *867 supra , at 1007. I doubt that this is true. A plaintiff wishing to discover whether an affirmative defense is plausible needs to do no more than serve a contention interrogatory. A plaintiff will serve written discovery on a defendant in nearly every case, and thus it would require little extra work to add interrogatories asking for the factual and legal basis of affirmative defenses. The cost of drafting such interrogatories will almost certainly be less than the cost of drafting and briefing a motion to strike an insufficient defense. And the answers to the interrogatories will likely identify the affirmative defenses that have merit. This, in turn, will enable the plaintiff to focus further discovery efforts on the plausible defenses.[2]
Proponents of detailed defense pleading also contend that boilerplate affirmative defenses clog the docket. See Palmer v. Oakland Farms, Inc. , No. 10cv00029, 2010 WL 2605179, at *4 (W.D. Va. June 24, 2010) ; Seiner, supra , at 1007. Again, I do not see how this could be so. In my experience, most affirmative defenses appear in answer and are never heard from again. They simply fall by the wayside as the case progresses. Only serious affirmative defenses show up in motions for summary judgment or at trial.
What would clog the docket clutter is applying a rigorous pleading standard to affirmative defenses. This is so for two reasons. First, plaintiffs will file more motions to strike, which will clutter the docket because, unlike most affirmative defenses, they require action by the court. Moreover, due to the liberal standard for granting leave to amend a pleading, see Fed. R. Civ. P. 15(a)(2), a motion to strike a boilerplate defense, even if successful, will usually result in the defendant's being granted leave to amend. This, in turn, could lead to a successive motion to strike that will consume additional resources for no good reason.
Second, if defendants must plead affirmative defenses in greater detail, they may find it necessary to omit a defense from their answer until they uncover facts that support it during discovery. If they discover such facts, they must move for leave to amend their answer to add the defense. I suspect that plaintiffs would oppose such motions by arguing that the discovered facts do not support the defense and that therefore leave to amend would be futile. All of this would consume additional resources, again for no good reason. It would be better to allow the defendant to raise any defenses that might apply to the type of claim alleged by the plaintiff in its answer to avoid waiver. Most of the defenses will then fall by the wayside without any action by the plaintiff or the court, and any serious defenses can be addressed in motions for summary judgment or at trial.
I do not mean to suggest that plaintiffs should never file motions to strike affirmative defenses. However, they should be limited to situations where the relevant facts are undisputed and the defense presents a pure legal question. For example, the parties may dispute which statute of limitations governs the plaintiff's claim, and the plaintiff may wish to obtain an early legal ruling on that question. A motion to strike would be an appropriate vehicle for obtaining this legal ruling, just like a motion to dismiss under *868 Rule 12(b)(6) would be an appropriate vehicle for obtaining a dispositive legal ruling about a plaintiff's claim. See 5C Wright and Miller, supra , § 1381 (noting that motions to strike "are a useful and appropriate tool when the parties disagree only on the legal implications to be drawn from uncontroverted facts"). However, a motion to strike arguing that the defendant failed to plead an affirmative defense in sufficient detail will almost always be a waste of resources. Even if the motion is successful, the court will grant the defendant leave to amend to add details to its answer. As discussed above, the plaintiff could have more efficiently obtained the details that will appear in the amended answer by serving a contention interrogatory.
For all these reasons, I would prefer to conclude that the defendants have adequately pleaded their affirmative defenses. However, the Seventh Circuit requires more detailed pleading of affirmative defenses. It requires that affirmative defenses be more than "bare bones conclusory allegations," that affirmative defenses contain "a short and plain statement of the facts," and that defendants "allege the necessary elements" of the defenses. Heller Fin., Inc. , 883 F.2d at 1294-95. In the present case, the affirmative defenses do not meet this standard, and therefore I must strike them. However, the defendants ask for leave to replead their defenses, and, as indicated, leave to replead is the norm. Accordingly, I will dismiss the affirmative defenses without prejudice and grant the defendants leave to replead.
The government contends that I should not grant leave to replead because the affirmative defenses would fail as a matter of law even if properly pleaded. But if the defenses fail as a matter of law no matter how they are pleaded, then why does the government raise the defendants' inadequate pleading as an issue? Rather than focusing on pleading defects, the government could have filed a more straightforward motion to strike that focused on the legal issues. In any event, the defendants identify various facts outside the pleadings that they claim support their defenses. Before making a legal ruling on the defenses, I would like to consider these facts. Therefore, I will grant the defendants leave to replead to include the facts in their answers.
The government may file a fresh motion to strike the amended affirmative defenses. But I would encourage it not to do so. As explained above, the better approach is for the government to take discovery on the defenses and then bring a motion for summary judgment on any defense that lacks factual support but is not clearly abandoned by the defendants during discovery. Even if the government wishes to obtain an early ruling on the legal sufficiency of a defense, an early motion for summary judgment would be preferable to another motion to strike. For it is possible that to determine the legal sufficiency of the defense, I will have to consider matters outside the pleadings, in which case I will have to either deny the motion to strike or convert it to a motion for summary judgment.
III. CONCLUSION
For the reasons stated, IT IS ORDERED that the government's motion to strike the defendants' affirmative defenses is GRANTED to the extent that the affirmative defenses are stricken without prejudice. The defendants are granted 30 days from the date of this order to file amended answers containing affirmative defenses that conform to the standard in Heller Financial .

The two highly respected treatises on federal practice both recommend against applying the plausibility standard to affirmative defenses. See 5C Wright and Miller, supra , § 1381 ("[t]he better view is that the plausibility standard only applies to the pleading of affirmative claims for relief"); 2 James Wm. Moore, Moore's Federal Practice-Civil § 8.08[1] (3d ed. 2018) ("affirmative defense pleading should not be subject to the same 'plausibility' standard applicable in pleading a claim for relief").

I realize that parties often answer contention interrogatories evasively. However, if a defendant does so, the plaintiff may move to compel and request the attorneys' fees incurred in bringing the motion. See Fed. R. Civ. P. 37(a)(3)(iii), (a)(4) & (a)(5)(A). In contrast, a successful motion to strike an insufficient defense will not result in attorneys' fees. Thus, a plaintiff should prefer a motion to compel proper interrogatory responses to a motion to strike an inadequately pleaded defense.